# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ANTHONY SEARS, ) | Case No. 11-04195-TOM-7 |
| ) | |
| Debtor. ) | |

| | |
|---|---|
| EDNA RENEE DEAVENS ) | |
| ) | |
| Plaintiff, ) | A.P. No. 11-00379-TOM |
| vs. ) | |
| ) | |
| ANTHONY SEARS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This adversary proceeding came before the Court for trial on March 28, 2012, on the amended complaint to determine dischargeability of a debt or to deny discharge filed by Edna Renee Deavens. Appearing before the Court were Edna Renee Deavens ("Plaintiff"), *pro se*; Anthony Sears ("Debtor"); and Jan Eberhardt, counsel for Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

States Code as defined in 28 U.S.C. § 157(b)(2)(I) and (J).[2] This Court has considered the pleadings, arguments, testimony, evidence, and the law, and finds and concludes as follows.[3]

## **FINDINGS OF FACT**[4]

Plaintiff engaged the services of Debtor, d/b/a Sears Concrete Service, at least in part to fix a flooding problem in her basement caused by water running down her angled carport. Plaintiff and Debtor entered into a written contract on June 21, 2010, wherein Debtor agreed to install on Plaintiff's property a two-car concrete drive pad, concrete steps, sidewalk, a fence with electric gate, a block wall, and railings for the total amount of $29,607.95. Debtor began work thereafter and it was not long before problems began to arise.

In order to lay the new concrete drive pad on level ground Debtor had to dig out a portion of Plaintiff's sloping yard, and in doing so, unexpectedly ran into rock. Debtor informed Plaintiff that he would have to charge more money due to the additional time and effort now needed to complete the dig; the parties agreed to approximately $1,000.00 more for this portion of the work.

In September 2010, after Debtor finished pouring the concrete for the carport and installing the block wall, Plaintiff measured the concrete slab and realized that the width was 4.5 feet shorter

---

[2] 28 U.S.C. §157(b)(2)(I) and (J) provide as follows:

>  (b)(2)Core proceedings include, but are not limited to–
>  (I) determinations as to the dischargeability of particular debts;
>  (J) objections to discharges[.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

than she intended and thus not wide enough for the carport. Debtor claimed that before he started work he marked off where the carport pad would be poured and the line where the block wall was to be placed and confirmed this with Plaintiff. Plaintiff denied that this occurred, stating that Debtor purposely put the wall in the wrong place. Regardless, Debtor again told her there would be an additional charge to make the carport area bigger because the wall would have to be completely knocked down before he could dig further into the yard. Debtor testified that he purposely did not finish the steps and backfill the trench because there would be no point if the wall had to be knocked down and the area widened.

Plaintiff identified other problems with the work that remain unresolved. The parties' contract called for Debtor to install an electric opener on the gates of the fence. Both parties agree that the opener has not been installed and both agree that Debtor said he would need an additional $2,500.00 before he would install it. Plaintiff contends however that the original contract price of $29,607.95 included the parts and labor for installing the opener. In addition, Plaintiff alleges that Debtor did not finish pouring the concrete slab in the back of her house, and that he left rods and an extra piece of gate in her yard.

The parties' contract provided for Plaintiff to pay 30% of the contract price for Debtor to start the job, an additional 30% when the job was half-way completed, and the remaining 40% when the entire job was completed. Despite this, Plaintiff paid Debtor $9,000.00 on June 23, 2010; $9,000 on June 25, 2010; $7,203 on July 1, 2010; $4,000 on August 13, 2010; and $1,000 on August 27, 2010. The stage of the job's completion at the time each of these payments were made is unclear, but it is undisputed that these payments were all made before the job was completely finished. Plaintiff testified she deviated from the contract in making payments because Debtor demanded she

3

do so or he would not continue to work. Debtor denied these allegations.

According to Plaintiff's's pleadings, she filed suit against Debtor in the District Court of Jefferson County and obtained a judgment.[5] Thereafter, on August 22, 2011, Debtor filed his bankruptcy case, and on August 29, 2011, Plaintiff filed this adversary proceeding against Debtor.

The Plaintiff contends that the Defendant left the work uncompleted, that he "mis-represented what was required to complete the work,"[6] and that, in his Answer to the complaint, he falsely denied that he failed to complete the work. She asks this Court to determine that the debt owed to her is nondischargeable pursuant to section 523(a)(6), or alternatively, that the Debtor be denied a discharge pursuant to section 727(a)(4)(C).[7]

## CONCLUSIONS OF LAW

**A. Section 727(a)(4)(C)**

Unlike section 523(a), which provides that a *particular* debt not be discharged when all of the elements are met, section 727(a) provides that a debtor will not receive a discharge of *any* of his debts. If a debtor is denied a discharge altogether he will not get the "fresh start" that is the purpose of the Bankruptcy Code. The Bankruptcy Court for the Northern District of Georgia has summed up what a court must consider before denying a debtor his discharge, or in other words, denying his

---

[5] Plaintiff never mentioned the state court proceeding during the trial before this Court, and did not introduce any state court pleadings, orders, or other documents into evidence.

[6] See Motion to Amend Complaint (Doc. 22). As will be discussed *infra*, the Plaintiff did not elaborate as to exactly what were the misrepresentations that the Debtor made. From the arguments presented at trial the Court presumes Plaintiff refers to the costs of completing the job.

[7] In her Complaint Plaintiff also seeks relief under § 707(a), which addresses dismissal or conversion of a case. At the hearing on her last Motion to Amend this Court struck the Plaintiff's count for relief under § 707(a) and allowed her to proceed with the counts under §§ 523(a)(6) and 727(a)(4)(C). At trial, the Plaintiff made clear that the ultimate result she sought was for Debtor to either finish the job or to refund her money.

fresh start:

> [W]hen proceeding under section 727, the plaintiff bears the burden of demonstrating that a denial of discharge is warranted. See Fed. R. Bankr. P. 4005; *see also In re Wines*, 997 F.2d 852, 856 (11th Cir.1993). . . . Furthermore, the Court must interpret the applicable provisions of section 727 narrowly, so as to favor a presumption of the debtor's eligibility for a discharge. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993); *In re Burgess*, 955 F.2d 134, 136 (1st Cir.1992); *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987). "Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt . . . is an extreme step and should not be taken lightly." *Rosen*, 996 F.2d at 1530 . . . .

*Looney v. Owens (In re Owens)*, AP No. 05-1706, 2006 WL 6589904, at *4 (Bankr. N.D. Ga. Feb. 3, 2006).

In her Complaint, Plaintiff specifically relies on Bankruptcy Code section 727(a)(4)(C) which provides:

> (a) The court shall grant the debtor a discharge, unless –
> . . .
> > (4) the debtor knowingly and fraudulently, in or in connection with the case –
> > . . .
> > > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act[.]

This subsection, despite containing the catchwords "knowingly" and "fraudulently," does not apply to the case before this Court. As explained by one bankruptcy court:

> Section 727(a)(4)(C) clearly contemplates the denial of a discharge to debtors who accept a "bribe," i.e., money or property, advantage or a promise of these for acting or forbearing to act in or in connection with the case. It also includes the giving or offering of a bribe by the debtor.

*Trustee v. Stokes (In re Stokes)*, 451 B.R. 44, 87 (Bankr. D. Mont. 2011) (*quoting* 6 *Collier on Bankruptcy* ¶ 727.06 (16th ed. 2010)). The misrepresentations alleged by the Plaintiff are not

5

"fraudulent" in the manner contemplated by this section. Further, section 727(a)(4)(C) does not apply to this case because the statute itself provides that the conduct must have occurred "in or in connection with the case . . . ." In other words, this Court must consider the timing of the alleged fraudulent conduct. As noted in *In re Fries*, "[t]his Section of the Bankruptcy Code applies only to fraudulent actions 'in connection with the case ...,' not actions that may have occurred prior to the commencement of the case . . . ." *Crescent Centre Apartments v. Fries (In re Fries)*, 436 B.R. 26, 28 (Bankr. W.D. Ky. 2010). Unfortunately for Plaintiff, she faces the same problem here. The work in question was performed (or not performed) before Debtor filed his bankruptcy case; likewise the dispute between the parties arose before the petition was filed. Thus, like the situation in *Fries*, Plaintiff cannot establish that Debtor's conduct occurred "in or in connection with" this bankruptcy case. Even assuming Plaintiff could have somehow gotten around these two problems there is not enough evidence for this Court to conclude that the Debtor should be denied a discharge. As discussed above, the Court must interpret a count brought pursuant to section 727 narrowly, with the presumption that Debtor is entitled to a discharge. Plaintiff has alleged only that Debtor misrepresented "what was required to complete the work" and that Debtor's denial in his Answer was a misrepresentation.[8] This alone is not sufficient for the Court to take the extreme step of denying the Debtor his discharge. Thus, the Plaintiff is not entitled to relief pursuant to section 727(a)(4)(C).

**B. Section 523(a)(6)**

Plaintiff also alleges that Debtor willfully failed to complete the work agreed upon in their

---

[8] It is commonplace for answers to complaints to deny alleged wrong-doing or liability. If a defendant agreed with everything that a plaintiff alleged there would be no need to involve the court.

6

contract and has asked this Court to determine the debt owed to her by Debtor is nondischargeable pursuant to section 523(a)(6), which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The type of injury that is considered "willful and malicious" according to this section has been described as "'a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse . . . .'" *LeDoux v. Tanner (In re Tanner)*, 365 B.R. 217, 231 (Bankr. N.D. Ala. 2007) (Cohen, J.) (*quoting Vickers v. Home Indemnity Co. (In re Vickers)*, 546 F.2d. 1149, 1150 (5th Cir. 1977)). According to the United States Supreme Court, the debtor must have deliberately or intentionally caused the injury. *Tanner*, 365 B.R. at 231 (*quoting Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d. (1998)). It is not enough that a debtor intends to do the act that leads to the injury; he must have intended the consequences. *Tanner*, 365 B.R. at 231.

In the case *LeDoux v. Tanner (In re Tanner)*, the plaintiffs filed a nondischargeability complaint against the debtor who had constructed a home for the plaintiffs. Among other things, the plaintiffs complained that the area of his lot in which debtor had filled in a large trench had begun to deteriorate and collapse. *Tanner*, 365 B.R. at 299. One of the plaintiffs testified that the debtor had represented that the area to be filled in "'would stay that way forever.'" *Id.*, 365 B.R. at 240. The debtor denied making that statement, and further, testified that he had previously used the same technique he used to fill the trench to successfully fill in an area being used as a soccer field. *Id.*, at 241 - 42. The plaintiffs claimed the debtor withheld information about the way the trench was being filled in, and such withholding constituted a willful and malicious injury under section 523(a)(6). In

7

addressing this argument the bankruptcy court set out what the plaintiffs must show to succeed with a section 523(a)(6) claim:

> For the [plaintiffs] to succeed with their section 523(a)(6) claim, they would have had to present evidence that [the debtor] deliberately filled the trench in a manner that would insure that it would fall in or deteriorate back to its original condition after the [plaintiffs] bought the property, or that [the debtor] somehow intentionally sabotaged the job for the purpose of injuring the [plaintiffs].

*Id.* at 242. The court concluded that the debtor did not deliberately mishandle or intentionally sabotage the job in order to injure the plaintiffs, but instead used a technique and worked in a manner reasonably certain to produce a result that would last over time. *Id.* Because the debtor did not intentionally injure the plaintiffs the debt was not excepted from discharge pursuant to section 523(a)(6).

The reasoning in *Tanner* applies to the case before this Court. Plaintiff claims that she "suffered damages in the loss of [her] property (money), and/or physical damage to [her] land." There is no question that, although he has been paid more than the original contract price, the work Debtor was hired to do remains unfinished: for example, the ditch beside the block wall has not been filled in, the steps have not been constructed, and the electric gate opener has not been installed. In addition, the carport dimensions may be short by 4.5 feet.[9] Plaintiff stated at trial that she believes Debtor intentionally put the block wall in the wrong place and did not finish the job once he realized it would take additional time to complete. However, there is no evidence that Debtor intentionally left the job unfinished for the specific purpose of damaging Plaintiff's land or causing her to lose money. Further, there is no evidence that Debtor intentionally poured or placed the concrete for the

---

[9] From the testimony at trial, it appears that Plaintiff and Debtor had different starting points for their measurements - Plaintiff measured from the point where the original carport ended, while Debtor measured from her house.

8

carport differently than Plaintiff requested. For the Plaintiff to prove this debt or obligation to be nondischargeable, she would have had to demonstrate, show and prove that the Debtor set out and intentionally and deliberately poured the carport pad incorrectly, put the steps in the wrong place, and failed to otherwise complete the job to Plaintiff's satisfaction. She was not able to prove all of these facts.

The parties to this adversary proceeding entered into a written agreement. After the work was substantially complete, Plaintiff became dissatisfied with the results and/or the performance of the contract. It appears to this Court that the Plaintiff asks the Court, in essence, to declare this debt nondischargeable because the job was not performed and completed as she agreed and expected. This is basically a claim by Plaintiff that Debtor breached the contract, which "is defined as a 'failure, without legal excuse, to perform any promise which forms the whole or part of a contract.'" *Lemaster v. Dutton*, 694 So. 2d 1360, 1366 (Ala. Civ. App. 1996) (*quoting Black's Law Dictionary* 188 (6th ed. 1990)). In other words, a breach of contract happens when one party fails to do what he promised or agreed to do in the contract. Breach of a contractual obligation is not a fraud addressed by section 523(a), and thus a failure to do what has been promised is not enough to prevent the debt from being discharged, even if there is no excuse for the failure to keep the promise. *Stifter v. Orsine (In re Orsine)*, 254 B.R. 184, 189 (Bankr. N.D. Ohio 2000). As concisely stated by another bankruptcy court, "breach of contract is not sufficient grounds to find nondischargeability under the willful and malicious injury standard." *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 436 (Bankr. S.D. Ohio 2007) (determining that a debt was not excepted from discharge under section 523(a)(6) although debtor, a contractor, incompletely and carelessly performed his obligations under the contract). *See also Prewett v. Iberg (In re Iberg)*, 395 B.R. 83, 89 - 90 (Bankr. E.D. Ark. 2008); *Hernandez v. Dorado*

9

*(In re Dorado)*, 400 B.R. 304, 311 (Bankr. D.N.M. 2008).

Interestingly, in this case, there is no dispute that the Plaintiff herself failed to comply with the contract because she did not make the payments consistent with the written agreement. Further, there is no dispute that the Debtor has not completed everything he agreed to in the parties' contract. As mentioned earlier, steps have not been constructed, the ditch has not been filled, and the gate opener has not been installed. In addition, the concrete pad may be too small to be used as a carport but to make it bigger will mean the block wall - work that was finished - will have to be torn down. Deavens has already paid more than agreed in the contract and now she will have to pay even more to hire someone else to finish the job. From the standpoint of what is fair to Deavens, Debtor should have to finish the job or repay her enough to hire someone else to do it. Under state contract law Deavens would be entitled to some kind of relief - after all, she did receive a judgment against Debtor in state court. However, the purpose of bankruptcy is to give debtors a "fresh start," or in other words, to allow a debtor to discharge debts he cannot afford to pay and to start over. In enacting the Bankruptcy Code, Congress (not the Bankruptcy Court) determined what may and may not be excepted from discharge. The Debtor may have acted negligently, carelessly, and contrary to his promises in the contract, but he has not acted in a willful and malicious manner as these terms are defined for section 523(a)(2)(6). This Court must apply the facts of a case to the laws enacted by Congress and can hold a debt nondischargeable only when the debt is one of those Congress has identified as such; in this case, the debt does not fit within the statute. The Court is sympathetic to the Plaintiff for the problems she has and will continue to have with regard to the project but nonetheless must hold that the debt is not excepted from discharge under section 523(a)(6). This Court understands Plaintiff's position. After all, it is undisputed that Debtor has received

10

Case 11-00379-TOM   Doc 30   Filed 04/23/12   Entered 04/23/12 13:51:54   Desc Main
Document      Page 10 of 12

compensation above that agreed in the contract, and furthermore that the work he was hired to do remains unfinished.

## CONCLUSION

Despite this Court's understanding of and sympathy for Plaintiff's situation, only two questions are before this Court: (1) whether the debt to Plaintiff is nondischargeable, and (2) whether Debtor is to be denied a discharge altogether. There is not enough evidence to answer either of these questions in Plaintiff's favor.

This Court finds that the Plaintiff has failed to prove that any debt owed to her should be declared nondischargeable under section 523(a)(6), or that Debtor should be denied a discharge under section 727(a)(4)(C). Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Edna Renee Deavens, to declare certain indebtedness of the Debtor, Anthony Sears, nondischargeable in accordance with 11 U.S.C. § 523(a)(6) is **DENIED**. It is further

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Edna Renee Deavens, to deny discharge to the Debtor, Anthony Sears, in accordance with 11 U.S.C. § 727(a)(4)(C) is **DENIED**. It is further

**ORDERED, ADJUDGED, AND DECREED** that the indebtedness of the Debtor, Anthony Sears, to the Plaintiff, Edna Renee Deavens, is **DISCHARGEABLE** and shall be included in the discharge of the Debtor to be entered in this case by order of this Court.

Dated: April 23, 2012

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM: dgm

xc:  Debtor
    Jan Eberhardt, counsel for Debtor
    Edna Renee Deavens, 4 10th Court West, Birmingham, AL 35204
    Andre Toffel, Trustee

12